**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**SERGIO CORNELI,**

                           **Plaintiff,**

                        v.                                 1:12-CV-1303
                                                                   (FJS/TWD)

**ADVENTURE RACING CO., LLC; JONATHAN
LAPPER, Individually and as Father and Natural
Guardian of C.S, an Infant; CHARLOTTE
LAPPER, Individually and as Mother and Natural
Guardian of C.S., an Infant,**

                           **Defendants.**
_____

**APPEARANCES**                                   **OF COUNSEL**

**LIPSIG, SHAPEY, MANUS & MOVERMAN,**    **THOMAS J. MOVERMAN, ESQ.**
**P.C.**
40 Fulton Street
New York, New York 10038
Attorneys for Plaintiff

**POWERS & SANTOLA, LLP**                    **DANIEL R. SANTOLA, ESQ.**
39 North Pearl Street, 2nd Floor
Albany, New York 12207-2205
Attorneys for Plaintiff

**BURKE, SCOLAMIERO, MORTATI**          **PETER M. SCOLAMIERO, ESQ.**
**& HURD, LLP**
7 Washington Square
P.O. Box 15085
Albany, New York 12212
Attorneys for Defendant Adventure Racing Co., LLC

| BAILEY, KELLEHER & JOHNSON, P.C. | CRYSTAL R. PECK, ESQ. |
| Pine West Plaza 5 | JOHN W. BAILEY, ESQ. |
| Suite 507 | |
| Washington Avenue Extension | |
| Albany, New York 12205 | |
| Attorneys for the Lapper Defendants | |

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiff Sergio Corneli ("Plaintiff") has filed an Amended Complaint claiming that a go-kart owned by Defendant Adventure Racing Co., LLC ("Adventure Racing") and operated by Defendant C.S.,[1] at the time a seventeen-year-old infant child, who suffered from Down's Syndrome, struck a go-kart that Plaintiff was operating and seriously injured him.

In that amended complaint, Plaintiff alleges four negligence-based causes of action: (1) against Defendant Adventure Racing for "ownership, operation, management, maintenance, supervision, staff training and control of its go-kart ride" and "supervision and control of its customer, C.S.", (2) against Defendant C.S. for operating and driving a go-kart in a dangerous manner, (3) against Defendant Jonathan Lapper for knowingly allowing Defendant C.S., allegedly his son, to operate a go-kart in a dangerous manner, and (4) against Defendant Charlotte Lapper for knowingly allowing her son, Defendant C.S., to operate a go-kart in a dangerous manner.

---

[1] Defendant C.S. is not named as a party in the caption of the Amended Complaint; however, he is listed among the "Parties" to the case in the Amended Complaint. *See* Dkt. No. 24, Amended Complaint at ¶ 6.

Plaintiff also alleges claims based on the theory of "negligent entrustment": (5) against Defendant Jonathan Lapper for entrusting a dangerous instrumentality, a go-kart, to Defendant C.S. despite knowing that C.S. intended to operate the go-kart in an unsafe manner, and (6) against Defendant Charlotte Lapper for entrusting a dangerous instrumentality, a go-kart, to Defendant C.S. despite knowing that C.S. intended to operate the go-kart in an unsafe manner. *See* Amended Complaint at 8-14.[2]

On March 21, 2014, Defendant Adventure Racing moved this Court for summary judgment dismissing Plaintiff's complaint based on the doctrine of "assumption of the risk" and the Lapper Defendants' cross-claims against it. *See* Dkt. No. 50, Notice of Motion at 1. On September 12, 2014, the Lapper Defendants moved for summary judgment dismissing all of Plaintiff's claims. *See* Dkt. No. 78, Notice of Motion at 1. Also on September 12, 2014, Plaintiff moved this Court for summary judgment against "defendant CS [sic] on the issue of liability as a matter of law, on the grounds that, under New York [S]tate substantive law, his operation of the go-kart vehicle

---

[2] On January 4, 2014, Defendant Adventure Racing, in its Answer to Plaintiff's Amended Complaint, made cross-claims against Defendants Jonathan Lapper and Charlotte Lapper, alleging, "Any injuries or damages sustained by [Plaintiff] as a result of the alleged incident . . . were sustained in whole or in part by reason of the negligence and culpable conduct" of the Lapper Defendants. *See* Dkt. No. 27, Answer to Amended Complaint at ¶¶ 119-20. Defendant Adventure Racing claimed, "If it is determined that [Adventure Racing] is liable in any degree to [Plaintiff], [Adventure Racing] is entitled to have the liability apportioned among and between the defendants." *See id.*

On January 7, 2014, the Lapper Defendants, in their Answer to Plaintiff's Amended Complaint, likewise made a similar cross-claim against Defendant Adventure Racing, alleging, "Any injuries or damages sustained by [Plaintiff,] as a result of the incident . . . were sustained in whole or part by reason of the negligence and culpable conduct of co-defendant, Adventure Racing Co., LLC." *See* Dkt. No. 28, Amended Answer at ¶ 33. The Lapper Defendants also claimed, "In the event that [Plaintiff] recovers against [the Lapper Defendants], they shall be entitled to indemnification and/or contribution from [Defendant Adventure Racing], in whole or in part, based upon their proportionate share of liability, if any . . . ." *See id.* at ¶ 34.

constituted negligent conduct that resulted in [P]laintiff's injuries . . . ." *See* Dkt. No. 82, Notice of Motion at 1.

## II. DISCUSSION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At the summary judgment stage, the court's role is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In making this determination, the court must view the evidence in the record and draw all reasonable inferences in the light most favorable to the non-moving party. *See Consol. Risk Servs., Inc. v. Auto. Dealers WC Self Ins. Trust*, No. 1:06–CV–871, 2010 WL 2735701, *3 (N.D.N.Y. July 9, 2010) (citation omitted).

Summary judgment is appropriate if the party that bears the burden of proof at trial fails to establish an essential element of its case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Moreover, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Anderson*, 477 U.S. at 247–48. Thus, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted).

With this standard in mind, the Court will address each of the summary judgment motions in turn.

4

**A. Defendant Adventure Racing's motion for summary judgment based on Plaintiff's alleged assumption of risk**

Under New York law, a person who participates in a sport or recreational activity "consent[s] . . . to those injury-causing events which are known, apparent, or reasonably foreseeable consequences of the participation." *Turcotte v. Fell*, 68 N.Y.2d 432, 439 (1986) (citation omitted). This consent operates to relieve other participants in the activity of a duty to use reasonable care; and, absent evidence of "reckless or intentionally harmful conduct," an action for personal injury will, therefore, be barred as a matter of law. *Id.* at 437-38. In *Turcotte*, the New York Court of Appeals explained that the inquiry into whether an individual assumed the risks inherent in a recreational activity "includes consideration of the participant's knowledge and experience in the activity generally." *Id.* at 440. However, for purposes of determining whether the doctrine of primary assumption of the risk negates a defendant's duty of care, "knowledge plays a role but inherency is the sine qua non." *Morgan v. State of New York*, 90 N.Y.2d 471, 484 (1997) (citations omitted).

As such, a go-kart rider assumes the risks inherent in that activity, which includes the risk that his go-kart will bump into other objects. *See Loewenthal v. Catskill Funland, Inc.*, 237 A.D.2d 262, 263 (2d Dep't 1997) (citation omitted). However, where a participant's injury results from a concealed or unreasonably increased risk, an exception to the primary assumption of risk doctrine applies. *See Morgan*, 90 N.Y.2d at 485 (citations omitted). Nonetheless, where the allegedly harmful contact is prohibited by the rules of such an activity, it does not necessarily render such conduct by a co-participant intentional or reckless sufficient to justify exception to the primary assumption of risk doctrine. *See Barton v. Hapeman*, 251 A.D.2d 1052, 1052 (4th

Dep't 1998). Indeed, where a participant is allegedly harmed "by the sudden and abrupt action of [a co-participant] whose action could not have been anticipated and avoided by the most intensive supervision," the establishment hosting the activity "bears no liability for failure to supervise." *See Winter v. City of New York*, 208 A.D.2d 827, 828 (2d Dep't 1994) (citations omitted).

Here, Plaintiff alleges that Defendant C.S. made threats about wrecking other participants prior to beginning the race and that Defendant Adventure Racing's employees heard and responded to these statements. *See* Dkt. No. 55-3, Deposition of Sergio Corneli ("S. Corneli Depo.") at 62-63. Plaintiff alleges that, once the race began, his own go-kart came to a stop on the track because another racer's go-kart had stopped in front of him. *See id.* at 77-79. While Plaintiff waited for a track worker to come over and move the other go-kart, Plaintiff alleges that there was a large open area to his side, and his son and nephew drove past him while he was stopped. *See id.* Plaintiff alleges that Defendant C.S. then violently slammed his go-kart into the rear of Plaintiff's go-kart at or near top speed, despite having adequate time and sufficient room on the track to avoid the collision. *See id.* Plaintiff alleges that Defendant Adventure Racing's employees could have used the track's automatic "Kartrol" system, which can remotely disable its go-karts, and removed Defendant C.S. from the track prior to the alleged collision. *See* Dkt. No. 55-10, Affidavit of William H. Avery ("Avery Aff.") at ¶ 12. Plaintiff alleges that this impact caused him a spinal injury and paraplegia. *See* Dkt. No. 55-11, Affidavit of Jonathan Korn, M.D. ("Korn Aff.") at ¶ 6.

Plaintiff's allegations have raised a triable issue of fact as to whether Defendant Adventure Racing knew or should have known that Defendant C.S.'s allegedly intentional actions created an unreasonably increased risk to his co-participants, a risk that imposed on Defendant

6

Adventure Racing a duty to supervise him or prevent him from harming his fellow racers by use of the Kartrol device. Accordingly, this Court denies Defendant Adventure Racing's motion for summary judgment.

**B. The Lapper Defendants' motion for summary judgment**

*1. Plaintiff's claims against Defendant Jonathan Lapper*

The Lapper Defendants argue that Defendant Jonathan Lapper was not *in loco parentis* to Defendant C.S. and therefore did not assume the right or duty of all parental obligations for C.S. *See* Dkt. No. 78-1, Memorandum of Law ("Lapper Memo") at 5 (citing *Rutkowski v. Wasko*, 286 A.D. 327, 331 (3d Dep't 1955)).

The New York State Supreme Court, Appellate Division, Third Department, held in *Rutkowski v. Wasko*,

> A stepfather does not merely by reason of such relationship acquire a parental status. *In loco parentis* refers to a person who has fully put himself in the situation of a lawful parent by assuming *all* the obligations incident to the parental relationship and who actually discharges those obligations.

286 A.D. 327, 331 (3d Dep't 1955). In order to establish that a person who is not a biological parent stands *in loco parentis* to a child, a litigant must demonstrate the alleged parent's intent to support and care for the child on a permanent basis. *See Johnson v. Jam. Hosp.*, 62 N.Y.2d 523, 530 (1984).

The Lapper Defendants allege that Defendant C.S. is not Jonathan Lapper's biological child, but his stepson, and that all decisions regarding C.S.'s ability to perform physical activities, including go-kart races, are left to C.S.'s biological parents. *See* Dkt. No. 78-1, Memorandum of

7

Law ("Lapper Memo") at 5. The Lapper Defendants further allege that Defendant C.S. resides with his biological father every other week. *See id.*

Plaintiff alleges that Defendant Lapper "resides with [Defendant C.S.] and has had a step-parent relationship with him for at least . . . five years." *See* Dkt. No. 110-2, Plaintiff's Memorandum of Law in Opposition to Defendant Lapper[s'] FRCP 56 Motion ("Plaintiff's Memo") at 17. Plaintiff does not specifically dispute the Lapper Defendants' allegation that Defendant C.S. only resides with Defendant Jonathan Lapper on alternating weeks. Likewise, Plaintiff does not specifically dispute the Lapper Defendants' allegation that Defendant Jonathan Lapper deferred to Defendant C.S.'s biological parents in decisions regarding C.S.'s participation in activities, including go-kart racing. Instead, Plaintiff argues without citation that Defendant Jonathan Lapper "does not dispute that he provides financial and some emotional support to [Defendant C.S.]." *See id.* Plaintiff also implicitly impugns the credibility of Defendant Jonathan Lapper's "self-serving affidavit" and describes Jonathan Lapper's assertion that he did not exercise authority over Defendant C.S.'s activities as "shocking." *See id.* Plaintiff also argues that Defendant C.S.'s "limitation and Down Syndrome diagnosis . . . will presumably require the assistance and care of his parents for several years in the future." *See id.*

After reviewing the record in a light most favorable to Plaintiff, the Court concludes that Plaintiff has not alleged sufficient facts to establish that Defendant Jonathan Lapper was *in loco parentis* to Defendant C.S. at the time of the alleged collision. Firstly, Defendant C.S.'s medical condition is irrelevant to determine whether Defendant Jonathan Lapper had taken over the parenting role hitherto performed by Defendant C.S.'s biological father. Also, Plaintiff's allegations regarding the duration of Defendant Jonathan Lapper's step-parent relationship, his financial support for Defendant C.S., and his emotional support for C.S. are insufficient to meet

*Rutkowski*'s requirement that an alleged parent "fully" assume and "actually" discharge all responsibilities of parenthood. *See Rutkowski*, 286 A.D. at 331. The Lapper Defendants' allegations regarding the continuing parenting role of Defendant C.S.'s biological father, while obviously self-serving, are uncontroverted by any of Plaintiff's evidence. There is nothing self-evidently "shocking" or particularly implausible about the Lapper Defendants' allegations that Defendant C.S.'s biological father retains an important role in the young man's upbringing. Even if Defendants' allegations lacked credibility, it is Plaintiff's burden to prove the existence of an *in loco parentis* relationship by establishing that Defendant Jonathan Lapper fully assumed and actually discharged the parenting role. *See id.* Plaintiff has not done so. Accordingly, this Court grants the Lapper Defendants' motion with regard to Plaintiff's claims against Defendant Jonathan Lapper.

### *2. Plaintiff's negligence claim against Defendant Charlotte Lapper*

The Lapper Defendants argue that, under New York State law, a parent cannot be held liable for her negligent supervision of her child. *See* Lapper Memo at 5-6 (citing *Holodook v. Spencer*, 36 N.Y.2d 35 (N.Y. 1974)). They argue that Plaintiff cannot point to any record evidence that Defendant Charlotte Lapper heard Defendant C.S. state that he was going to smash, bump into, or hit other go-karts prior to the subject race. *See id.* They argue Plaintiff's allegations on this point are entirely speculative and are insufficient to oppose summary judgment. *See id.* (citing *Harlen Assoc. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001)).

The Lapper Defendants also allege track attendants were present to observe Defendant C.S. and other participants and to enforce track rules. *See id.* at 7. They argue this was sufficient adult supervision for the circumstances. *See id.* They also argue that, even if they had observed

9

Defendant C.S. violating track rules, they had no ability or authority to stop the race – only the track employees could. *See id.*

Plaintiff does not directly respond to this argument, instead devoting his response to the Lapper Defendants' allegedly negligent entrustment of a dangerous instrument to Defendant C.S. *See* Plaintiff's Memo at 10-15. The Court finds, therefore, that Plaintiff has conceded this point. Accordingly, the Court grants the Lapper Defendants' motion for summary judgment with regard to Plaintiff's fourth cause of action against Defendant Charlotte Lapper.

### *3. Plaintiff's negligent entrustment claim against Defendant Charlotte Lapper*

It is well-settled under New York law that a parent cannot be held liable for the negligent supervision of her child. *See Panlilio v. Vergakis*, 22 Misc. 3d 1108(A) (Supreme Ct., Cnty. of Nassau 2008) (citation omitted). One exception to this rule is the doctrine of negligent entrustment, i.e., "where a parent negligently entrusts a dangerous instrument to . . . her child[.]" *Id.* (citations omitted). "With regard to negligent entrustment, 'a parent owes a duty to protect third parties from harm that is clearly foreseeable from the child's improvident use or operation of a dangerous instrument, where such use is found to be subject to the parent's control.'" *Id.* (quoting *Rios v. Smith*, [95 N.Y.2d 647,] 653 [(2001)]); *see also Santalucia v. Cnty. of Broome*, 205 A.D.2d 969, 970 (3d Dep't 1994) (holding that "'a parent owes a duty to third parties to shield them from an infant child's improvident use of a dangerous instrument, at least, if not especially, when the parent is aware of and capable of controlling its use'" (quotation omitted)). To determine whether a particular object is a dangerous instrument, the court looks at the nature of the instrument, its size, shape, weight and operation as well as the age, intelligence and proficiency of the child using it. *See Panlilio*, 22 Misc. 3d 1108(A) (citations omitted).

Here, the Lapper Defendants allege that Defendant C.S. was 17 years old at the time of the incident, certainly old enough to participate in a go-kart race – an amusement ride that had only a minimum height requirement. *See* Lapper Memo at 8. They allege that Defendant C.S. was also an experienced go-kart operator, having driven go-karts hundreds of times before without incident. *See id.* They argue that, even if Defendant C.S. did announce his intention before or during the race to drive his go-kart in a dangerous manner, "[P]laintiff cannot provide any support for the assertion a parent or an adult other than a track attendant must supervise a go-kart race." *See id.* at 8-9. Both Jonathan and Charlotte Lapper specifically deny hearing Defendant C.S. make any statement as to his intention to drive dangerously. *See id.* at 11.

The Lapper Defendants also point to testimony of Adventure Racing employees that Defendant C.S. was "quiet and well-mannered." *See id.* at 9. They describe how Defendant Charlotte Lapper supervised Defendant C.S.'s initial operation of a go-kart, first allowing him to participate only as a passenger, then on an empty track, then with others. *See id.* at 9-10.

On the other hand, Plaintiff alleges that his own family members, who were allegedly standing nearby the Lapper Defendants, heard Defendant C.S. announce his intention to drive dangerously. *See* Plaintiff's Memo at 11. Plaintiff also notes that the Lapper Defendants and Defendant Adventure Racing have a long-term relationship, as Defendant Jonathan Lapper has represented Defendant Adventure Racing's owner as an attorney. *See id.* Plaintiff argues that this calls into question any statements made by Defendant Adventure Racing's employees in favor of the Lapper Defendants' motion. *See id.*

Furthermore, Plaintiff argues that, although the Lapper Defendants are correct that Defendant Adventure Racing's employees should have acted to prevent Plaintiff's harm, that does not absolve the Lapper Defendants of concurrent liability for their negligent entrustment of

11

Defendant C.S. with a go-kart. *See id.* at 12.  Plaintiff contends that it is clear from the Lappers' own testimony that, given the intelligence and cognitive limitations of Defendant C.S., as well as the acknowledged dangerousness of the go-karts, questions of fact exist as to whether the Lapper Defendants should have entrusted C.S. with the complete control of the go-kart that afternoon. *See id.* at 13.

Plaintiff points to school records and Individualized Education Program ("IEP") regarding Defendant C.S.'s abilities and limitations as a person with Down's Syndrome. *See id.* He argues that these also raise an issue of fact as to the propriety of the Lapper Defendants' decision allowing him to operate the go-kart on his own. *See id.* Defendant C.S.'s IEP specifically states that one of his "special alerts" was "low safety awareness" and his need to "improve a sense of safety issues," as he is "currently unable to do so without the assistance of a job coach or aide." *See id.*

The IEP states that Defendant C.S. "has significant delays in social skills, attending skills, decoding, reading comprehension, math concepts and calculations, written expression, receptive and expressive language skills and adaptive behavior which interfere with participation in age appropriate activities." Plaintiff thus argues that whether CS had the actual ability safely and properly to operate a go-kart on his own is a question of fact that should be left to the jury. *See id.*

Here, based on the parties' allegations, the Court finds that there are triable issues of fact as to whether Defendant Charlotte Lapper knew or should have known that it would be unsafe for her son to operate a go-kart. Even if it is true that Defendant C.S. had operated such a vehicle without incident many times in the past, that does not necessarily mean that allowing him to do so was a reasonably prudent decision. Accordingly, this Court denies the Lapper Defendants'

motion for summary judgment with regard to Plaintiff's negligent entrustment claim against Defendant Charlotte Lapper.

**C. Plaintiff's motion for summary judgment against Defendant C.S.**

When approaching another vehicle from behind, a driver has a duty to maintain a reasonably safe speed, control his vehicle, and use reasonable care to avoid colliding with the other vehicle. *See Gray v. Delaware Equip. Servs., Inc.*, 56 A.D.3d 1006, 1007 (3d Dep't 2008) (citations omitted). A rear-end collision establishes a prima facie case of negligence on the part of the driver and imposes a duty on him or her to come forward with a non-negligent explanation for the accident. *See id.* (citation omitted).

Plaintiff argues that there is no valid legal distinction between the go-karts involved in the subject incident and ordinary motor vehicles involved in similar types of hit-in-the-rear collisions. *See* Dkt. No. 82-2, Plaintiff's Memorandum of Law in Support of Summary Judgment Against Defendant C.S. at 9.

Plaintiff argues that Defendant C.S.'s aggressive driving was a clear violation of the standard of reasonable care and conduct expected on the ride as well as of the standard of reasonable care in the operation of any motorized vehicle that can cause injury. *See id.* at 5. Plaintiff alleges that his go-cart was stopped in plain sight for an adequate time period and that Defendant C.S. subsequently rear-ended it. *See id.* at 10. He notes that no non-negligent explanation has been set forth during discovery on this record. *See id.* at 10. He argues that Defendant C.S.'s operation of the go-kart, as documented in Plaintiff's sworn deposition testimony and other exhibits, is a "plain and simple example of negligence in driving a motorized vehicle." *See id.*

It is not necessary for the Court to rule at this time upon whether the automobile negligence standard that Plaintiff suggests applies to go-karts. Regardless of whether the go-kart collision that Plaintiff describes would or would not constitute negligence, there is still a triable issue of fact as to whether the collision occurred at all. Neither Defendant C.S., nor any of the Lapper Defendants, nor any employees of Defendant Adventure Racing admit that Defendant C.S.'s go-kart ever collided with Plaintiff's go-kart. Accordingly, this Court denies Plaintiff's motion for summary judgment on the issue of liability against Defendant C.S.

### III. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant Adventure Racing's motion for summary judgment is **DENIED**[3]; and the Court further

**ORDERS** that the Lapper Defendants' motion for summary judgment is **DENIED** with regard to Plaintiff's sixth cause of action against Defendant Charlotte Lapper for negligent entrustment; and the Court further

**ORDERS** that the Lapper Defendants' motion for summary judgment is **GRANTED** with regard to Plaintiff's claims against Defendant Jonathan Lapper; and the Court further

---

[3] Defendant Adventure Racing also moved for summary judgment on its cross-claim against the Lapper Defendants. *See* Dkt. No. 50. Neither party briefed the cross-claim issue. Therefore, the Court **denies** Defendant Adventure Racing's motion for summary judgment with regard to its cross-claim.

**ORDERS** that the Lapper Defendants' motion for summary judgment with regard to Plaintiff's fourth cause of action against Defendant Charlotte Lapper for negligence is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's motion for summary judgment against Defendant C.S. on the issue of liability is **DENIED**[4]; and the Court further

**ORDERS** that counsel shall participate in a telephone conference on **July 17, 2015**, at **10:00 a.m.** to schedule a date for the trial on this matter. The Court will provide counsel with the telephone number for this conference prior to the scheduled date.

**IT IS SO ORDERED**

Dated: June 24, 2015
Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Judge

---

[4] As a result of this Memorandum-Decision and Order, the following claims remain for trial: (1) Plaintiff's first claim against Defendant Adventure Racing for negligence, (2) Plaintiff's second claim against Defendant C.S. for negligence, (3) Plaintiff's third claim against Defendant Charlotte Lapper for negligent entrustment, (4) Defendant Charlotte Lapper's cross-claim against Defendant Adventure Racing, and (5) Defendant Adventure Racing's cross-claim against Defendant Charlotte Lapper.