UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SERGIO CORNELI,

                                  Plaintiff,

                                                         1:12-cv-01303
v.                                                       (FJS/TWD)

ADVENTURE RACING CO., LLC, JONATHAN
LAPPER, Individually and as Father and Natural
Guardian of C.L., an Infant, CHARLOTTE LAPPER,
Individually and as Mother and Natural Guardian of
C.S., an Infant,

                                  Defendants.
_____

APPEARANCES:                               OF COUNSEL:

LIPSIG, SHAPEY LAW FIRM                     THOMAS J. MOVERMAN, ESQ.
*Counsel for Plaintiff*
40 Fulton Street
New York, NY 10038

POWERS, SANTOLA LAW FIRM                    DANIEL R. SANTOLA, ESQ.
*Counsel for Plaintiff*
39 North Pearl Street
2nd Floor
Albany, NY 12207-2205

BURKE, SCOLAMIERO LAW FIRM                  PETER M. SCOLAMIERO, ESQ
*Counsel for Defendant Adventure Racing Co., LLC*
7 Washington Square
Albany, NY 12212

BAILEY, KELLEHER LAW FIRM                   JOHN W. BAILEY, ESQ.
*Counsel for Defendants Jonathan Lapper and*                CRYSTAL R. PECK, ESQ.
*Charlotte Lapper*
Pine West Plaza 5
Suite 507
Washington Avenue Extension
Albany, NY 12205

1

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT-RECOMMENDATION

Defendants Jonathan and Charlotte Lapper ("the Lappers") moved to preclude the testimony of Plaintiff's experts, Jonathan A. Korn, M.D., and William H. Avery. (Dkt. No. 79.) Defendant Adventure Racing Co., LLC ("Adventure Racing") also moved to preclude the testimony of Plaintiff's experts, Dr. Korn and Mr. Avery, as well as Kenneth R. Laughery, Ph.D., France Verville, B.S., M.B.A., and James Lambrinos, Ph.D. (Dkt. No. 83.) Plaintiff opposed both motions. (Dkt. No. 112.) Plaintiff moved to preclude the testimony of the Lappers' expert, Ken Martin, and the testimony of Adventure Racing's expert, Jeffrey Oppenheim, M.D. (Dkt. No. 80.) Adventure Racing and the Lappers have opposed that motion. (Dkt. Nos. 107, 108, and 115.)

For the reasons stated herein, I recommend that the Lappers' motion be denied; that Adventure Racing's motion be denied; and that Plaintiff's motion be denied.

## I.     FACTUAL AND PROCEDURAL SUMMARY

On March 12, 2012, Plaintiff Sergio Corneli and C.S., the child of the Lappers drove go-karts at Adventure Racing's public facility in Queensbury, New York. (Dkt. No. 79-1 at 1.[1]) At the relevant time, C.S. was a seventeen year old minor with Down Syndrome who had driven go-karts at Adventure Racing several times without incident. *Id.* at 1-2. On the day at issue, an unidentified go-kart driver spun out on the track while both Plaintiff and C.S. were operating go-karts. *Id.* at 3. Plaintiff saw the unidentified driver spin out before braking and contacting the

---

[1]     Page numbers referenced in Docket entries are the page numbers automatically inserted by CM/ECF, the Court's electronic filing system.

side of her go-kart. *Id.* This stopped the unidentified driver and Plaintiff's go-karts just past the "S-turn" on the track. *Id.* C.S. then struck Plaintiff's go-kart from behind. *Id.* Plaintiff had previously been diagnosed with a "very serious preexisting degenerative disorder which adversely affects the condition of his spine." *Id.* at 2. Plaintiff alleges that as a result of C.S. striking his go-kart from behind in a "careless and negligent" manner and as a result of the Lappers allowing and permitting C.S. to operate the go-kart, Plaintiff was severely injured. (Dkt. No. 24 ¶ 64, 72, 79.)

After C.S. struck Plaintiff's go-kart, Plaintiff had difficulty breathing and exiting his go-kart. (Dkt. No. 55-1 at ¶ 14.) Plaintiff could not drive after the incident, and after complaining of pain in his back, was taken to the Emergency Room at Glens Falls Hospital. *Id.* at ¶ 16. While being examined, Plaintiff lost sensation in his legs and the ability to move his legs. *Id.* Plaintiff was transported by helicopter to Albany Medical Center where he underwent surgery on his back. *Id.* Since then, Plaintiff has been "completely paralyzed below [his] belly button area and [he cannot] walk on his own legs." *Id.* at ¶ 17.

Plaintiff filed a Complaint (Dkt. No. 1) which was subsequently amended on the stipulation of the parties (Dkt. No. 26) by the filing of an Amended Complaint. (Dkt. No. 24.) The Amended Complaint alleges causes of action sounding in negligence and negligent supervision. *Id.* The Lappers and Adventure Racing filed Answers to the Amended Complaint (Dkt. Nos. 27 and 28) and thereafter discovery progressed including depositions of the parties and multiple non-party witnesses, extensive document exchange, and expert witness disclosure. Upon the close of discovery, these evidentiary motions were filed (Dkt. Nos. 79, 80, and 83), as were summary judgment motions. (Dkt. Nos. 50, 78, and 82.) The Court denied summary

judgment on the negligence claims alleged against Adventure Racing and C.S., and the negligent

supervision claim against Charlotte Lapper.  (Dkt. No. 120.)  The Court granted summary

judgment on the negligence claims against the Lappers, and the negligent supervision claim

against Jonathan Lapper.[2]  *Id.*

## II.    LEGAL STANDARD

The admission of expert testimony is governed by Federal Rule of Evidence 702, which

states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or
> education may testify in the form of an opinion or otherwise if: (a) the expert's
> scientific, technical, or other specialized knowledge will help the trier of fact to
> understand the evidence or to determine a fact in issue; (b) the testimony is based on
> sufficient facts or data; (c) the testimony is the product of reliable principles and
> methods; and (d) the expert has reliably applied the principles and methods to the
> facts of the case.

Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme

Court held that expert testimony must be both reliable and relevant to the issue in order to be

admissible under Federal Rule of Evidence 702.  *Daubert*, 509 U.S. at 589.  "Rule 702 governs

the district court's responsibility to ensure that 'any and all scientific testimony or evidence

admitted is not only relevant, but reliable.'" *Nimely v. City of New York*, 414 F.3d 381, 396 (2d

Cir. 2005) (quoting *Daubert*, 509 U.S. at 589).  The district court serves the "gatekeeping"

function "to ensure the reliability and relevancy of expert testimony."  *Kumho Tire Co., Ltd. v.*

*Carmichael*, 526 U.S. 137, 152 (1999).  "Faced with a proffer of expert scientific testimony . . .

---

[2]      While Jonathan Lapper is no longer a party to the action, the Court will continue
to use "the Lappers" in this Report-Recommendation to refer to Defendant Charlotte Lapper.

the trial judge must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592-93 (explaining that the scientific knowledge speaks to the reliability of the testimony and the assistance to the trier of fact speaks to the relevance of the testimony). The *Daubert* standards for Rule 702 pertain to not only to scientific knowledge, but also to "technical" or "other specialized" knowledge. *Kumho Tire*, 526 U.S. at 147.

In order to determine the admissibility of expert testimony, the court must determine: (1) whether the witness is qualified as an expert; (2) whether the testimony is based on reliable data and methodology; and (3) whether the testimony will assist the trier of fact (relevancy). *Nimely*, 414 F.3d at 396-97. *See Daubert*, 509 U.S. at 590-93; *Amorgianos v. National Railroad Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002).

To determine reliability of the expert testimony, the court should consider, "the indicia of reliability identified in Rule 702, namely, (1) that the testimony is grounded on sufficient facts or data; (2) that the testimony is the product of reliable principles and methods; and (3) that the witness has applied the principles and methods reliably to the facts of the case." *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (citing *Amorgianos*, 303 F.3d at 265). *Daubert* contemplates that the law should employ only scientific knowledge that has achieved some foundation in the field from which it comes; thus the court therein enumerated a non-exhaustive list of factors bearing on reliability: whether the theory or technique can be tested, whether the theory or technique has been subjected to peer review and publication, whether there is a known or potential rate of error, and whether there is general acceptance of the theory or technique in the community. *Daubert*, 509 U.S. at 593-94.

"A minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion *per se* inadmissible. 'The judge should only exclude the evidence if the flaw is large enough that the expert lacks "good grounds" for his or her conclusions.'" *Amorgianos*, 303 F.3d at 267 (quoting *In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 746 (3d Cir. 1994)).

## III.   JONATHAN KORN, M.D.

In their motion, the Lappers argue that Jonathan Korn, M.D., is not a qualified expert on the information to which he is expected to testify and that his testimony is not reliable. (Dkt. No. 79-1.) Defendant Adventure Racing also argues that Dr. Korn is not a qualified expert. (Dkt. No. 83-2.)

### A.   Dr. Korn's Qualifications

Dr. Korn is a board-certified orthopedic surgeon. (Dkt. No. 80-9 at 1.) He graduated from Chicago Medical School, conducted his residency in orthopedic surgery at Mount Sinai Hospital in New York City, and is presently an attending medical doctor in the Department of Orthopedics and Trauma at Cabrini Medical Center/Mount Sinai School of Medicine Affiliate.[3] *Id.* at 11-12. Dr. Korn has held positions in numerous hospitals caring for patients with spinal injuries and fractures, and has lectured on orthopedics and biomechanics. *Id.* at 1, 11. Dr. Korn has studied the pathology of bones and joints, tuberculosis of bones and joints, and cervical and lumbar spine surgery; delivered papers on an analysis of trabecular change with osteoporosis,

---

[3]      Dr. Korn's curriculum vitae states this as his current position, but he testified in his declaration that "I am currently the medical director of a company that deals with medical problems and injuries that occur on commercial vessels." (Dkt. No. 80-9 at 1.) He also testified to being the director of a maritime healthcare company. (Dkt. No. 83-10 at 5.)

avascular necrosis and bone graft incorporation, acromio-clavicular separation, correction of complex spinal deformities, a new method of fixation for patella fractures, and laser surgery of the spine; and published on axillary artery injury in closed fracture of the neck of the scapula and Clostridium welchii arthritis. *Id.* at 12-13.

**B.** **Expected Testimony**

Plaintiff intends for Dr. Korn to testify as an expert on "the issues of orthopedic and spinal injury" and specifically to analyze and assess the spinal injury sustained by Plaintiff. *Id.* at 1. Dr. Korn concluded that "the mechanism of [Plaintiff's] injury . . . was the result of forward flexion due to anterior translation of his upper spine/torso and a relatively fixed position of lower/spine torso" and that the "spinal damage was caused by the go-kart collision from hinging motion at T9-10 [vertebrae] and crushing and impaction of the central portion of superior end-plate of T10 [vertebrae] by the T9 vertebral body." *Id.* at 2. This hinging motion was a result of "being struck by from behind AND the result of his go-kart then striking the go-kart that was stopped perpendicular in front of his go-kart." *Id.* at 3. Further, the spinal trauma caused the spinal epidural hemorrhage, which resulted in Plaintiff's permanent paraplegia. *Id.* at 2.

In order to make this conclusion, Dr. Korn reviewed the following documents and records: Plaintiff's Glen Falls Hospital emergency room chart; Albany Medical Center chart; Institute de Readaptation records; Hospital du Sacre-Coeur records; two depositions given by the Plaintiff; CT scan from Glens Falls Hospital on May 12, 2012; MRI from Albany Medical Center on May 13, 2012; various x-ray films from Hospital Sainte-Croix taken prior to the collision; photographs of the go-karts at Adventure Racing and the Lappers in the go-karts; narrative reports of Andrew Dubin, M.D., Life Care Plan by France Verville; Defendant's expert testimony

and report of Jeffrey Oppenheim, M.D.; information about the rules and safety regulations at Adventure Racing; and Plaintiff's medical treatment records (translated into English) relating to his condition of ankylosing spondylitis from 2002, 2010, and May 12-18, 2012. *Id.* at 2-3.

In Dr. Korn's rebuttal to Plaintiff's expert witness disclosure, Dr. Korn noted that "either collision or both collisions had the same traumatic result for Mr. Corneli."

### C.     Arguments for Preclusion

The Lappers move under Federal Rule of Evidence 702 and *Daubert* to preclude the expert testimony of Dr. Korn arguing he is not a qualified expert and his testimony is not reliable. (Dkt. No. 79-1 at 6.)  Adventure Racing likewise asserts Dr. Korn is not qualified.  (Dkt. No. 83.)

First, the Lappers argue that the expert testimony of Dr. Korn should be precluded from trial because he is not a qualified expert in the area on which he is proposed to testify.  (Dkt. No. 79-1 at 7-10.)  Defendants concede that Dr. Korn, as an orthopedist, would be qualified to testify as an expert witness on certain medical issues, but "he is not qualified to render conclusions and opinions pertaining to causation" since he is not a biomechanical engineer and does not hold any degrees in engineering, demonstrating a lack of expertise in the forces created by accidents and the injuries or effects they cause. *Id.* at 8-9.  Defendants claim Dr. Korn's education and expertise in orthopedics do not suggest he is an expert in determining the cause of Plaintiff's injury. *Id.* at 9.  Further, Defendants argue that Dr. Korn did not witness the forces of the accident, attempt to recreate them to observe the possible effects, or examine Plaintiff and his injuries  all of which would have contributed to an understanding of the causes behind Plaintiff's injuries. *Id.*

Second, the Lappers argue that the expert testimony from Dr. Korn is not reliable and is

based on "inadequate data and methodology". *Id.* at 10-14. The Lappers assert that Dr. Korn's testimony is not grounded on sufficient facts or data. *Id.* at 11-13. Dr. Korn never performed any testing on the instrumentalities or mechanisms (i.e., the go-karts) that caused the injury; never examined Plaintiff's injuries; never referenced any scientific data; and ultimately crafted opinions that were unsupported by reliable evidence pertaining to the issue of causation of the injury. *Id.* at 12-13. Specifically, Dr. Korn opined that bleeding in Plaintiff's back was caused by the go-kart impact, without addressing the medications that he admits contributed to the bleeding. *Id.* at 13.

Defendant Adventure Racing also argues under Federal Rule of Evidence 702 and *Daubert* to preclude the expert testimony of Dr. Korn because he is not a qualified expert. (Dkt. No. 80-2.) Adventure Racing propounds that although Dr. Korn is a medical expert, he is unqualified to testify because his testimony includes opinions regarding the mechanism that caused Plaintiff's injury and the cause of Plaintiff's injury. (Dkt. No. 83-2 at 8.) Adventure Racing therefore argues that Dr. Korn offers testimony that is entirely in a different field or discipline from his expertise. *Id.*

### D.     Analysis

Dr. Korn opines that the medical cause of Plaintiff's injury was the flexing of the spine he does not conclude specifically which collision caused that flexion (whether it was one or both). *See* Dkt. No. 83-10. Dr. Korn makes a medical evaluation of the cause of the injury, rather than identifying exactly which collision caused the injury. As such, data regarding the involved go-karts and testing of the go-karts is not necessary to form the basis of his opinion as argued by the Defendants. As an orthopedic surgeon, Dr. Korn has the medical knowledge to

provide an opinion regarding how Plaintiff's spine was injured in such a way to cause permanent

paraplegia. Undoubtedly, Dr. Korn used his years of medical training and experience    including

tests, scientific data, methods, and principles    to make these medical determinations.

By concluding that either collision (front or back) could have caused the spinal flexion,

which caused the permanent paraplegia, Dr. Korn is acting within his area of expertise, basing

his opinions on medical knowledge, and applying his knowledge to the collision. *McCullock v.*

*H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir. 1995) (plaintiff's medical expert permitted to

provide opinion about cause of plaintiff's injury based upon practical experience and medical

training); *Turner v. Delta Airlines*, 06 CV 1010(NG), 2008 WL 222559, at *2, 2008 U.S. Dist.

LEXIS 5528, at *7 (E.D.N.Y. Jan. 25, 2008) ("A doctor's opinions on the issue of causation are

relevant, and indeed, necessary to the treatment of the patient, and therefore constitute an

explanation of treatment.") (citation omitted). Thus, Dr. Korn is a qualified expert to testify on

the medical cause of Plaintiff's orthopedic injury, and his testimony is reliable. Accordingly, I

recommend that the motion to preclude Dr. Korn's testimony be denied.

## IV.    WILLIAM AVERY

The Lappers argue that William Avery is not a qualified expert on the information to

which he will testify, his testimony is not reliable, and it does not assist the trier of fact. (Dkt.

Nos. 79-1 at 14-16.) The Lappers also argue Mr. Avery violated Federal Rule of Evidence 703

by providing hearsay or inadmissible evidence. *Id.* at 16-18. Adventure Racing also argues that

Mr. Avery is not a qualified expert on the information proffered by him. (Dkt. No. 83-2 at 8-9.)

### A.    Qualifications

Mr. Avery has been a safety consultant with his own company in Orlando, Florida since

1990, specializing in "providing amusement and leisure industry safety consulting and expert witness services." (Dkt. No. 83-5 at 18.) Previously, he was the vice president of Safety, Security, Rides & Maintenance at HBJ Boardwalk & Baseball for four years; a corporate safety specialist at Anheuser Busch Companies, Inc./Busch Entertainment Corporation for five years; and a safety manager at Busch Gardens for five years. *Id.* He bases his opinions, in part, on thirty-seven years of experience in the amusement ride and device industry and his certifications.[4] *Id.* at 3. He claims to have inspected go-kart operations in multiple states. *Id*. at 3.

He holds an Associate's Degree in industrial occupational safety and health; he attended the University of South Florida Industrial Technical Education program; and he holds a number of safety and inspection certificates. *Id.* at 19-20. He has published and spoken on numerous topics in the amusement industry, including: safety guides for the entertainment industry, amusement ride warnings, emergency disaster guidelines and procedures for the entertainment industry, accident investigation, operational safety hazard analysis and warnings, risk services training, amusement rides operational safety, facilities inspection, amusement facilities and guest liabilities, guest and employee injury and fatality trends, crowd management, emergency first aid and catastrophic loss procedures, and go-kart safety. *Id.* at 22-25.

### B.    Expected Testimony

Mr. Avery's proposed testimony contains information about go-karting in general, as well as descriptions of the track at Adventure Racing and the go-karts, the speeds obtainable by the

---

[4]     These certifications include: Certified National Association of Amusement Ride Safety Official, Amusement Ride and Device Inspector, Amusement Industry Manufacturers and Suppliers Certified Operations Technician, General Qualified Inspector in the Commonwealth of Pennsylvania, Certified Maintenance Mechanic in Massachusetts. (Dkt. No. 83-5 at 3.)

go-karts, the safety warnings and signage, seatbelts, employee training, and driver safety controls. *Id.* at 6-15. His opinions include the following: (1) Adventure Racing knew the associated risks of the go-kart ride and had policies and procedures in place to prevent dangerous behavior; (2) Adventure Racing failed to properly secure Plaintiff's seatbelt, failed to respond to C.S.'s comments or dangerous driving, and failed to take measures to lower the risks to drivers after the collision; and (3) the incident was "foreseeable and preventable." *Id.* at 16.

In order to draw these opinions, Mr. Avery did an on-site inspection of the Adventure Racing facilities and reviewed the following: the go-kart manufacturer's manual ("J & J Manual"); American Standards for Testing Material ("ASTM"); New York Laws Chapter 145; Plaintiff's complaint; answers to interrogatories; and the depositions of witnesses to the collision.[5] *Id.* at 4.

### C. Arguments for Preclusion

The Lappers argue that Mr. Avery is unqualified as an expert to testify about the Lapper family's involvement in causing Plaintiff's injuries, his testimony is not reliable, and it does not assist the trier of fact. (Dkt. No. 79-1 at 15-19.) They further argue that Mr. Avery's testimony as a liability expert violates Federal Rule of Evidence 703 because they claim his testimony is based on hearsay from witnesses without any further analysis of the statements. *Id.* at 21-23.

Specifically, the Lappers first argue that Mr. Avery's education includes an Associate's Degree in industrial occupational safety and health, as well as course work from an industrial

---

[5]     Depositions reviewed by Mr. Avery were taken from Justin Barber, Sergio Corneli (Plaintiff), Charlotte Lapper (Defendant), Michael Wheeler, Cole Swanson, Jonathan Lapper (Defendant), Justin Ermiger, Kenneth Ermiger, Julia Lapper, John Stringfield, Dexter Jenkins, Dan Annis, Keither Laustrup, Dario Corneli Brunelle, Juliano Corneli, Antonella Corneli, Sylvain Brunelle, Isabelle Berube, and Bianca Corneli. (Dkt. No. 83-5 at 4.)

technical education program.  *Id.* at 10.  While these credentials may speak to his safety qualifications, the Lappers maintain that they do not enable him to speak as an expert on whether C.S. acted recklessly or intentionally.  *Id.*  The Lappers assert that Mr. Avery has no educational or professional experience with determining intent or psychological states of individuals that makes him a qualified expert regarding C.S.'s behavior.  *Id.*

Second, the Lappers argue Mr. Avery's testimony is not reliable.  *Id.* at 15.  Avery concluded that C.S. "Intentionally crashed into plaintiff and . . . was 'reckless,'" which "increased the risk to other participants."  *Id.* at 19.  The Lappers claim that Mr. Avery did not provide studies or materials that would demonstrate Avery's expert analysis about C.S.'s driving or speed, nor how he reached his analysis that C.S.'s behavior of speeding and bumping in go-karts caused an elevated risk to other participants.  *Id.*

Third, the Lappers argue that Mr. Avery's testimony as a liability expert pertains to legal conclusions or is within the realm of understanding of the lay juror, therefore not functioning to assist the trier of fact.  *Id.* at 19-21.  Defendants claim the issue at trial is whether C.S. was negligent, reckless, and intentionally caused injury to Plaintiff.  *Id.* at 20.  The Lappers assert that Avery's expert testimony directly answers these questions.  *Id.*

Fourth, the Lappers argue that Mr. Avery's testimony as a liability expert violated Federal Rule of Evidence 703 because it presents the jury with evidence that is unnecessary to render an opinion and is not generally relied upon in making similar opinions, and so should be precluded as hearsay or inadmissible evidence.  *Id.* at 21-23.  "Any conceivable probative value of the expert's opinions pertaining to the Lapper Family and C.S.'s role in causing the accident is wholly outweighed by the prejudice created by this testimony which would seek to proffer

testimony pertaining to the ultimate fact question to be resolved by the jury." *Id.* at 21.

Defendant Adventure Racing also argues under Federal Rule of Evidence 702 and *Daubert* to preclude the expert testimony of Mr. Avery because he is not a qualified expert. (Dkt. No. 83-2 at 9.) Adventure Racing argues Avery is unqualified to testify because he lacks the professional experience and education pertaining to the go-kart industry in New York State and his testimony usurps the fact finder's role rather than assists the fact finder since it is "inherently subjective and speculative" and "is not subject to any particular standards or controls." *Id.* at 9-10 (noting that Avery claimed Adventure Racing failed to properly secure Plaintiff's seatbelt and inadequately placed the safety signs, even though he acknowledged that the regulations were not specific to these points).

### D.    Analysis

Mr. Avery's opinions pertain specifically to the failures of Defendant Adventure Racing to conform with industry and go-kart standards and procedures. (Dkt. No. 83-5 at 16.) In his deposition, he testified that he looks at incidents from an "operational standpoint" rather than accident reconstruction, meaning that he is concerned with "[p]ractices, procedures, policies, standards, what should be done under a given set of circumstances, was that complied with, were standards complied with, was the training appropriate, were people doing what they were supposed to be doing." (Dkt. No. 83-9 at 8:18-9:6.) The review done by and the opinions given by Mr. Avery specifically pertain to these areas of specialty. After his long career in the amusement and entertainment safety industry, he is a qualified expert on the precise topics on which he bases his opinion. Under *Daubert's* framework, Avery can offer opinions about how Adventure Racing ran the go-kart track based upon his work experience where he evaluated and

14

made decisions about usage, placement, and verbiage of warning signs, and other safety procedures. *See Daubert*, 509 U.S. 592-93.

Mr. Avery is a qualified expert and his testimony is reliable in that it is grounded in the facts he gathered from the go-kart track and other record evidence, such as the depositions. Mr. Avery's testimony will also assist the trier of fact as he has expert knowledge of the norms of amusement rides and their safety procedures.

Further, Federal Rule of Evidence 703, states:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. Rule 703. The Lappers argue that this rule prohibits Mr. Avery from testifying to his opinions about C.S. and the Lapper family which include an opinion that "the reckless and intentional actions of [C.S.] during the ride were not part of the ordinary operation and risks . . . . The intentional 'crashing' into other [] go-karts that C.S. did and tried to do is also not one of the ordinary risks . . . ." (Dkt. No. 79-1 at 21.) Here, Mr. Avery may need to rely on testimony from trial witnesses regarding how C.S. was driving in order to render an opinion on how the go-kart would react or the consequences of such driving at a go-kart track. Avery, as noted above, has the experience and training regarding go-kart operations to apply the testimony as it comes in regarding how C.S. was driving. Thus, Mr. Avery should not be precluded from offering opinions regarding C.S.'s operation of the go-kart, the procedures utilized at Adventure Racing, and what was actually done there under the circumstances at issue. For these reasons, I

recommend that the motion be denied.

## V. KENNETH R. LAUGHERY, Ph.D.

Defendant Adventure Racing moves under Federal Rule of Evidence 702 and *Daubert* to preclude the testimony of Kenneth R. Laughery, Ph.D., because it is unreliable. (Dkt. No. 83-2 at 13-16.)

### A. Expert's Qualifications

Dr. Laughery currently holds the title of Emeritus Professor at Rice University. (Dkt. No. 83-7 at 3.) He has held positions as a Research Psychologist for the U.S. Army, faculty member in the departments of psychology and industrial engineering at the State University of New York at Buffalo, faculty member and chair of the psychology department at the University of Houston, and faculty member and chair of the psychology department at Rice University. *Id.* at 3-4. He has taught graduate and undergraduate courses in human factors and ergonomics, human factors methodology, human reliability, and safety. *Id.* at 4. He is certified as a Human Factors Professional, and has published numerous articles and books on the design and effectiveness of product instruction, warnings and labels, industrial accident analysis, and information technology. *Id.* Mr. Laughery also has offered testimony as an expert witness in a large list of cases. *Id.* at 9-10.

### B. Expected Testimony

Mr. Laughery's testimony includes the following opinions: (1) the safety warnings and signs at Adventure Racing were excessive and would result in a number of customers not attending to them; (2) the location of the relevant signs were inappropriate and deficient; (3) the content of the relevant warning signs were not in accordance with well-established principles of

warning design; and (4) Adventure Racing's inadequate warning and sign system was "more likely than not a significant factor in the incident involving [Plaintiff's] injury." *Id.* at 7-8.

### C.     Arguments for Preclusion

Defendant Adventure Racing argues that the Mr. Laughery offers unreliable testimony because it is not supported by appropriate validations, theories, and techniques. (Dkt. No. 83-2 at 10.) Instead, Laughery merely speculates as to the effect of the placement and wording of the signs as a significant factor contributing to Plaintiff's injury. *Id.* at 11.

### D.     Analysis

Dr. Laughery has experience as a professor in the areas of psychology and industrial engineering and he has provided expert testimony in 74 cases since 2010. (Dkt. No. 83-7 at 9-11.) Defendant Adventure Racing's argument that Dr. Laughery does not offer any "data," "principles," or "methodology" as applied to the facts of this case is unfounded. Instead, Dr. Laughery cites the facts of the case, most specifically to the signs and warnings. *Id.* at 5-6. He concludes that the warning signs were so prevalent and the content of the signs so voluminous, that the resulting effect was to "overwarn" users of Adventure Racing's go-karts. *Id.* at 7.

Dr. Laughery has evaluated, conducted, and published research on topics including the design and effectiveness of product instructions, warnings, and labels, and conducted research involving industrial accident analysis. *Id.* at 4. He has edited and authored books and articles on effective warnings, and the information contained in warnings and safety communications. *Id.* In providing his expert opinion, he evaluated various relevant discovery documents, reports, and depositions. *Id.* at 5. He references a specific standard of the American National Standards Institute ("ANSI") in support of his opinion that the relevant warnings were inadequate. *Id.* at 7.

17

In short, Dr. Laughery's opinions are based upon his review of the file materials and warning signs, his background, education, and experience, and publications relevant to warnings in comparison to the warnings present at Adventure Racing's go-kart track. Under the reliability prong of the *Daubert* analysis, Dr. Laughery's testimony is reliable and relevant because it is supported by appropriate validations. *Daubert*, 509 U.S. at 592-93; Fed. R. Evid. 702; *Zaremba v. General Motors Corp.,* 360 F.3d 355 (2d Cir. 2004) (court may consider whether technique has been subjected to peer review and publication in evaluating scientific reliability). Therefore, I recommend that Dr. Laughery's proposed expert testimony be permitted, and that the motion to preclude his testimony be denied.

## VI.     FRANCE VERVILLE, B.S., M.B.A.

Defendant Adventure Racing moves under Federal Rule of Evidence 702 and *Daubert* to preclude the testimony of France Verville, B.S., M.B.A., because she is not qualified to provide expert testimony in the subject on which she is expected to give an opinion. (Dkt. No. 83-2 at 16-17.)

### A.     Expert's Qualifications

Ms. Verville has been a consultant in future care and costs analysis, focusing on assessments in occupational therapy as an expert witness in civil and administrative courts since 1988. (Dkt. No. 83-8 at 12.) She has presented 167 reports to the Quebec Superior Court as an expert witness. *Id.* at 13. She has held positions as the Assistant Trustee of the College of Occupational Therapists of Quebec; as a Management Consultant for the Ministry of Health and Social Services; and as an occupational therapist. *Id.* at 12-16. Ms. Verville frequently performs needs assessments and evaluations for physical and material assistance of patients including

assessments for physical limitations and palliative care.  *Id.* at 13-15.  She has a Bachelor of

Science in occupational therapy and a Master's Degree in Business Administration.  *Id.* at 11.

She lists numerous training classes, including in home care and Matheson Life Care planning.

*Id.*

### B.     Expected Testimony

Ms. Verville's testimony "presents an assessment of costs and needs resulting from

[Plaintiff's] condition of being paraplegic."  *Id.* at 20.  The assessment provides the detailed

needs and costs that Plaintiff will incur as a result of his injuries.  *Id.* at 23-40.

### C.     Arguments for Preclusion

Defendant Adventure Racing moves to preclude Ms. Verville's expected testimony

arguing she is not a qualified expert based upon a four sentence argument that Ms. Verville's

curriculum vitae fails to show any certification or credentials as a life care planner, medical

doctor, or vocational expert.  (Dkt. No 83-2 at 16; *see also* Dkt. No. 83-8 at 10-17.)  "In the

absence of a certification to render opinions as a certified Life Care Planner . . . , Mr. [sic]

Verville lacks the qualifications to render an opinion on the subject about which he [sic] intends

to testify."  (Dkt. No. 83-2 at 16.)

### D.     Analysis

Defendant Adventure Racing offers no authority on which to base its argument that an

expert must be certified in order to render an opinion on a subject.  Ms. Verville has more than

30 years of experience and work with handicapped individuals, both at hospitals and in their

homes.  (Dkt. No. 83-8 at 10-17.)  Her extensive experience includes occupational evaluation and

assessment of a handicapped individual's physical and material needs including daily life

activities, feeding techniques, personal care needs, rehabilitation, home adaptation, therapeutic techniques, and wheelchair, prosthesis, and assistive device needs. *Id.* at 13-17. She reviewed various medical records of Plaintiff, and performed an in-person assessment of Plaintiff and his wife at their home. *Id.* at 19. She is familiar with costs and services in Quebec, Canada, where Plaintiff resides. *Id.* at 18-44.

Lengthy experience, such as Ms. Verville's, can constitute a valid basis for an expert opinion. Fed. R. Evid. 702; *see also SR International Bus. Ins. Co. v. World Trade Ctr. Props., LLC,* 467 F.3d 107, 132 (2d Cir. 2006) (insurance expert could properly rely on his experience in the insurance industry to testify as to industry practices). The expert must show why "that experience is a sufficient basis for [his or her] opinion." Fed. R. Evid. 702 Advisory Committee Note. Verville's experience in occupational and rehabilitative therapy and life care planning is sufficiently broad-based to satisfy that requirement. Therefore, in light of Ms. Verville's 30 years of experience, knowledge, skill, and practice in those professional fields in Quebec, Canada, I recommend that Adventure Racing's motion to preclude her testimony be denied.

## VII. JAMES LAMBRINOS, Ph.D.

Defendant Adventure Racing also moves under Federal Rule of Evidence 702 and *Daubert* to preclude the testimony of James Lambrinos, Ph.D., again arguing that he is not a qualified expert regarding the subject matter on which he intends to offer opinions. (Dkt. No. 83-2 at 16-17.)

### A. Expert's Qualifications

Dr. Lambrinos is a professor of economics in the School of Management at Union Graduate College, Union University. (Dkt. No. 83-11 at 3.) He has a Ph.D. in Economics, and

wrote his dissertation on "Health, Income Maintenance, and Labor Supply." *Id.* He has

published numerous journal articles, books, and book chapters on the subjects of medical

economics, health care costs, and earnings losses, among others.[6] (Dkt. No. 83-3 at 4-7.)

## B. Expected Testimony

Dr. Lambrinos' expected testimony includes information about Plaintiff's projected

earnings and related losses over his lifetime, as well as explanations for his analysis and

conclusions. (Dkt. No. 83-2 at 10-18.) These calculations included employment income,

medical costs, and the differences in earning losses. *Id.*

## C. Arguments for Preclusion

Defendant Adventure Racing moves to preclude Dr. Lambrinos' testimony asserting that

he is not a qualified expert. *Id.* at 16-17. Adventure Racing claims that Dr. Lambrinos is not

qualified to provide calculations of Plaintiff's lost earnings analysis because "Mr. Lambrinos'

calculations assume that [Plaintiff] is totally and permanently disabled and unable to work . . . .

However, none of Mr. Lambrinos' calculations assume that Mr. Lambrinos' credentials list him

as a medical doctor or vocational expert." *Id.* at 16-17.

## D. Analysis

As above, Defendant Adventure Racing offers no authority on which to base its argument

that an economics expert should be a medical doctor or vocational expert. The expert opinion to

be solicited from Dr. Lambrinos regarding future lost earnings relies on the medical opinion of

Plaintiff's physical medicine and rehabilitation expert, Andrew Dubin, M.D., who opines that

_____

[6] Notably, Mr. Lambrinos has been published in the Albany Law Review, the Journal of the American Medical Association, the Harvard Business Review, and the Journal of Health and Economics. (Dkt. No. 83-11 at 4-6.)

Plaintiff is a traumatic paraplegic with multiple related problems. (Dkt. No. 112-11 at 4-13.) Dr. Lambrinos' projection of loss of future earnings and future employment-provided benefits is based upon relevant Canadian economic and financial data. (Dkt. No. 83-11 at 9-18.) He clearly has the education and experience to provide such opinions which will assist the trier of fact in evaluating Plaintiff's claimed losses. As such, I recommend Adventure Racing's motion to preclude the testimony of Dr. Lambrinos be denied.

## VIII. KENNETH R. MARTIN

Plaintiff moves to exclude the testimony of defense expert witness Kenneth R. Martin on the basis that he is not a qualified expert regarding the subject on which he is expected to testify, which is go-kart amusement rides. (Dkt. No. 80-2 at 23-24.) Plaintiff further asserts that Mr. Martin's testimony is speculative and unreliable under the *Daubert* tests. *Id.* at 23.

### A. Expert's Qualifications

Mr. Martin holds an Associate's Degree in criminal justice, and had taken course work in safety and risk administration. (Dkt. No. 80-5 at 8-12.) He has also completed courses in amusement device inspection, amusement ride safety inspection, ride maintenance training, amusement ride safety and inspection, property maintenance and inspection, and emergency management and disaster training. *Id.* at 8-14; *see also* Dkt. No. 80-6 at 95-96.

Mr. Martin has significant experience as an amusement park ride inspector and ride safety consultant. (Dkt. No. 80-6 at 29, 92.) His licenses and certificates include Amusement Park Inspector in Virginia, Missouri, Texas, and West Virginia. (Dkt. No. 80-5 at 14.) He has experience performing inspection of go-kart tracks, and has taken go-kart training courses. (Dkt. No. 80-6 at 99-100.)

### B.    Expected Testimony

Mr. Martin reviewed the deposition testimony of party and non-party witnesses, the J & J Manual, the ASTM, and New York state regulations governing go-kart rides.  (Dkt. No. 80-5 at 2.)  He also performed a site inspection at the subject go-kart track.  *Id.*  Mr. Martin opined that Adventure Racing complied with safety sign requirements for amusement rides, and noted that a repeating recording of safety rules was broadcast at the Adventure Racing go-kart ride to reinforce the safety signs.  *Id.* at 4-5.  Verbal instructions by the go-kart attendants were also given to the drivers.  *Id.*  Martin opined that Adventure Racing complied with applicable state law, the applicable Owner's Manual, and the applicable ASTM Amusement Ride Industry Standards as they pertain to the ownership and operation of a go-kart track.  *Id.*

Mr. Martin's expected testimony includes that Adventure Racing satisfied its safety responsibility by performing a visual check of Plaintiff's seatbelt, and that visual checks, not physical checks, of safety belt use is the general procedure throughout the amusement park industry.  (Dkt. No. 80-7 at 8.)  Mr. Martin is also expected to opine that Plaintiff failed to adhere to the ASTM standard regarding patron responsibility.  (Dkt. No. 80-5 at 5.)

### C.    Arguments for Preclusion

Plaintiff asserts that Mr. Martin's opinions about Adventure Racing's due care in safety signage, maintenance, and operations of the go-kart facility do not meet the reliability requirements set forth in *Daubert* because his opinions "were contrary to the facts or case law, did not account for obvious alternate explanations, were supported by no valid research or treatises, were not based on a comprehensive analysis of relevant facts, did not refer to peer review articles or texts, and did not exhibit scientific rigor."  (Dkt. No. 80-2 at 23.)  Plaintiff also

attacks Mr. Martin's qualifications noting he has never been qualified by any court as a go-kart operational expert, and never testified as one. *Id.* at 24. Plaintiff notes that Mr. Martin was evasive, and misstated fact or law, and was contradictory in his pre-trial testimony. *Id.* Plaintiff also argues that the inspection of Adventure Racing's go-kart facility by Mr. Martin was carefully screened, monitored, and supervised, and essentially did not involve testing for the track operations under normal working circumstances. (Dkt. No. 80-2 at 25.)

In short, Plaintiff disputes Mr. Martin's qualifications to testify because Martin does not have experience and training regarding go-kart operations in New York state or elsewhere, and his testimony is speculation based on conjecture, rather than the facts of the subject go-kart race at issue, industry standards, and controls.

### D.    Analysis

Mr. Martin's opinions specifically addressed Adventure Racing's compliance with the amusement park industry and go-kart standards and procedures. His report shows he is an experienced amusement park inspector and ride safety consultant, licensed in several states, albeit not New York. (Dkt. 80-5 at 14.) He has had responsibilities which include inspecting go-kart tracks. (Dkt. No. 80-6 at 100.) He reviewed party and non-party depositions, performed an inspection of Adventure Racing's go-kart track, and reviewed relevant industry materials and New York state regulations. (Dkt. No. 80-5 at 2.) Martin has significant and relevant experience in the amusement part industry which provides a basis for his expert opinions. *SR International Bus. Ins. Co.*, 467 F.3d at 132. Moreover, experts commonly testify to industry custom and practice. *Id.* at 133-34.

Generally, much like the arguments Defendants made to exclude Plaintiff's experts'

testimony, Plaintiff's arguments for excluding Mr. Martin's testimony address credibility issues rather than admissibility of the expert's testimony. Experts often evade questions, and make contradictory statements on intensive cross-examination. Misstatements of fact or law by an expert is likewise not unusual on vigorous cross-examination. Nevertheless, such perceived shortcomings of a proposed expert does not form the basis for excluding the testimony, although the trier of fact may ultimately very well reject it when weighing the credibility of witnesses.

Here, Mr. Martin's testimony meets the thresholds of reliability and relevance. His knowledge of, and experience and training in, the amusement park industry will assist the trier of fact to understand the evidence and/or determine the facts at issue. The review done by Mr. Martin and his opinions specifically pertain to his area of specialty. Therefore, I recommend that Plaintiff's motion to exclude Martin's testimony be denied.

## IX.    JEFFREY OPPENHEIM, M.D.

Plaintiff also moves to exclude the testimony of Jeffrey Oppenheim, M.D., on the assertion that Dr. Oppenheim did not use valid scientific principles and failed to personally review "critical" diagnostic tests to support his opinion as to the cause of Plaintiff's injuries. (Dkt. No. 80-2 at 7.)

### A.    Expert's Qualifications

Dr. Oppenheim is a board certified neurosurgeon. (Dkt. No. 80-3 at 2; Dkt. No. 108 at 6.) He holds a Bachelor's Degree from Princeton University and a Medical Degree from Cornell University Medical College. *Id.* He is a member of numerous medical societies and organizations, some of which particularly concentrate in neurosurgery. *Id.* He has numerous hospital affiliations, and has authored and/or co-authored various medical publications. *Id.* at 2-

3.  He has also testified as an expert witness in trials and other hearings.  (Dkt. No. 80-4 at 27.)

## B.    Expected Testimony

Dr. Oppenheim is expected to testify that it is not possible to determine whether

Plaintiff's spinal fracture occurred as a result of being struck from behind while in the go-kart or

from striking another go-kart with the front of his go-kart.  (Dkt. No. 80-3 at 8.)  "Either impact

could potentially cause this injury."  *Id.*  Dr. Oppenheim will also testify that Plaintiff's pre-

existing spinal condition, ankylosing spondylitis, made him "particularly vulnerable to traumatic

spinal fractures."  *Id.*  He opined that participating in a "high risk activity" is "inadvisable" for

patients with that spinal condition.  *Id.*  Further, Dr. Oppenheim noted that Plaintiff took an

excess of the recommended dosage of Advil which "resulted in a likely reaction yielding

abdominal pain and vomiting but also subsequent resulting in a significant hemorrhage in the

spinal canal causing paralysis."  *Id.* at 8-9.

Dr. Oppenheim bases his opinion on a review of Plaintiff's medical records from Glens

Falls Hospital and Albany Medical Center where the Plaintiff treated following the injury.  *Id.* at

8.

## C.    Arguments for Preclusion

Plaintiff contends that Dr. Oppenheim should be precluded from testifying as an expert

because he "failed to use valid scientific principles and failed to personally review the critical CT

and MRI studies . . . ."  (Dkt. No. 80-2 at 7.)  The crux of Plaintiff's motion is that Dr.

Oppenheim's opinions are speculative and not based on available information since he did not

review deposition transcripts of witnesses, or personally review the radiological studies or other

medical records of Plaintiff.  *Id.* at 7-8, 15-16.

Specifically, Plaintiff asserts that because Dr. Oppenheim does not have a definitive opinion on which alleged impact (front or rear) caused the Plaintiff's fracture, then he should be precluded from offering that testimony because it is "apropos of nothing." *Id.* at 8. Preclusion regarding proposed testimony that it is "inadvisable" for a patient with ankylosing spondylitis to participate in "high risk activity" is also necessary according to Plaintiff because Dr. Oppenheim had not obtained data about the speed or size of the go-karts, or about any precautions taken regarding the go-kart operations. Lastly, Plaintiff argues that Dr. Oppenheim's proposed testimony regarding Plaintiff's use of Advil and his opinion that it contributed to Plaintiff's spinal hemorrhage and hematoma, and subsequent paraplegia, should be precluded because it is speculative and not based on facts able to be inferred from the record. *Id.* at 18-19, 21. Dr. Oppenheim did not cite any peer review study in support of that opinion and did not identify how much Advil was in Plaintiff's blood at the relevant times. *Id.* at 21-22.

### D. Analysis

Dr. Oppenheim, like Plaintiff's expert Dr. Korn, makes a medical evaluation of the cause of Plaintiff's injury, rather than identifying exactly which collision caused the injury. As a neurosurgeon, Dr. Oppenheim has sufficient medical knowledge to provide an opinion regarding how Plaintiff's spine was injured so as to cause permanent paraplegia. There are factual questions regarding the occurrence of the collisions, whether they actually occurred, and if so their intensity, such that Dr. Oppenheim's testimony that either impact could have caused the Plaintiff's injuries is within his medical knowledge and is relevant to assist the trier of fact in the determination of the cause of Plaintiff's injuries and to understand the evidence.

Dr. Oppenheim's testimony regarding Plaintiff's use of Advil is likewise appropriate as it

is based upon his medical knowledge and understanding of Advil as an anticoagulant. (Dkt. No. 80-3 at 8-9; Dkt. No. 80-4 at 128.) This opinion is also based on Dr. Oppenheim's review of the medical records of Plaintiff's treatment following the injury which document Plaintiff's ingestion of Advil, and Dr. Oppenheim's medical knowledge, education, and experience. (Dkt. No. 80-3 at 8-9.) As such, it is relevant to the trier of fact's determination on causation and comparative fault.

Additionally, Dr. Oppenheim should be permitted to testify about Plaintiff's pre-existing spinal condition of ankylosing spondylitis since it is relevant and within the expert's medical knowledge and experience. Dr. Oppenheim should also be permitted to opine that patients with that condition should not engage in high risk activity for the same reason. Testifying that Plaintiff's underlying spinal condition makes him susceptible to injury is relevant to the trier of fact's understanding of that condition. However, whether or not the go-kart racing at issue here was a "high risk activity" is outside of Dr. Oppenheim's expertise, so that issue will need to be developed at trial through other witnesses' testimony. I recommend, nevertheless, that Plaintiff's motion to preclude Dr. Oppenheim's testimony be denied.

## X.    CONCLUSION

Accordingly, for the foregoing reasons and because the Advisory Committee Notes to the 2000 Amendments to Rule 702 state that "the rejection of expert testimony is the exception rather than the rule," it is hereby

**RECOMMENDED** that the motion (Dkt. No. 79) of the Lapper Defendants to preclude the testimony of Plaintiff's experts, Jonathan A. Korn, M.D., and William Avery be **DENIED**; and it is further

**RECOMMENDED** that the motion (Dkt. No. 83) of Defendant Adventure Racing to preclude the testimony of Plaintiff's experts, Jonathan A. Korn, M.D., William Avery, Kenneth P. Laughery, Ph.D, and France Verville, B.S., M.B.A., be **DENIED**, and it is further;

**RECOMMENDED** that the motion (Dkt. No. 80) of Plaintiff to preclude the testimony of Defendants' experts, Kenneth P. Martin and Jeffrey Oppenheim, M.D., be **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: July 10, 2015
      Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge